The Law Office of
**LENNY RAPADAS, P.C.**
Suite 2A, 130 Aspinall Avenue
Hagåtña, Guam 96910
Telephone: (671) 477-9893
Facsimile: (671) 472-2601

*Attorney for Plaintiff*

FILED
DISTRICT COURT OF GUAM
JUN 23 2017
JEANNE G. QUINATA
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

----------

| | |
|---|---|
| JOSHUA JOHN UNTALAN MESA, | CIVIL CASE NO. 17-00071 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| GUAM INTERNATIONAL AIRPORT AUTHORITY, VINCENT R.Q. CASTRO and DOES 1 to 5, | |
| Defendants. | |

----------

COME NOW, Plaintiff, Joshua John Untalan Mesa ("Plaintiff" or "Mesa"), by and through his attorney, Leonardo M. Rapadas, Esq., who pleads and respectfully brings his causes of action before this Court and alleges as follows:

I.

**INTRODUCTION**

1. This is an action for Constitutional violations and territorial law for personal and emotional injuries suffered by Plaintiff as a result of excessive force, unreasonable search and seizure and personal injury. Plaintiff brings this action for compensatory damages under 42 U.S.C. § 1983 because Defendants, Guam International Airport Authority ("GIAA") and Vincent R.Q. Castro ("Officer Castro"), jointly and severally, deprived Plaintiff of his federally-protected rights to be free from unreasonable seizure and unreasonable force under the United States Constitution, Amendments IV, XIV, as applied

to Guam through the Guam Organic Act.

2. As a direct result of the policies, practices, actions, customs and procedures of the Defendants, Plaintiff was intentionally deprived of his constitutional right to be free from unreasonable searches and seizures guaranteed to him by the Fourth Amendment to the United States Constitution. Officer Castro, a police officer acting in the course and scope of his employment with the GIAA, and acting under color of law, unjustifiably and unreasonably shot plaintiff under circumstances where no reasonable police officer would have done so. Under long established law on excessive deadly force, Officer Castro is not entitled to qualified or other immunity for these actions.

## II.
## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution and the Guam Organic Act. This Court has jurisdiction over Plaintiff's claim under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1343(3) (civil rights). This Court further has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction) as those claims form part of the same case or controversy.

4. Venue lies in the District Court of Guam, the district in which the claim arises, pursuant to 28 U.S.C. § 1391(b).

## III.
## PARTIES

5. Plaintiff is over the legal age, is a citizen of the United States and at all times relevant herein resided in Guam.

6. Defendant GIAA is an autonomous agency of the territory of Guam operating pursuant to the laws of the Territory of Guam. GIAA may be served with process through the Executive Manager of the A.B. Won Pat International Airport.

7. Defendant Officer Castro is an individual residing in the Territory of Guam.

The acts and omissions complained of herein arise from the conduct of Defendant Officer Castro while he was acting under color of state law, and each act and omission was committed pursuant to Officer Castro's employment and authority as an Airport police officer with the GIAA.

8. Plaintiff does not know the true names of Defendant Does 1 through 5, and therefore sues them by fictitious names. The names, capacities and relationships of Does 1 through 5 will be alleged by amendment to this Complaint when they are known.

9. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned in his Complaint, Defendant Does were the agents and/or employees of GIAA and, in doing the things alleged in the Complaint, were acting within the course and scope of employment of GIAA and/or authority vested therein.

## IV.

## FACTS

10. On June 15, 2016, Plaintiff was driving a motorcycle that had no license plates.

11. The GIAA Airport Police Division employed Officer Castro and Officer Cameron Chaco ("Officer Chaco") at all times relevant to this Complaint.

12. Officer Castro and Officer Chaco encountered the Plaintiff around noon time, on June 15, 2016, riding the motorcycle at the Home Depot parking lot in Tamuning. The Officers were in an official marked GIAA patrol vehicle.

13. The officers asked Mesa to turn off the motorcycle as they crossed paths but Mesa left the parking lot. The officers attempted to follow but lost sight of him after Mesa turned onto Marine Corp. Drive.

14. The officers illegally drove beyond their jurisdictional territory, traveling onto Harmon Metal Street, near Adrian Sanchez Street, also known as "Hamburger Road". That area is not within the Airport Police Division's primary jurisdiction, or its "expanded area."

15. The officers noticed Mesa stopped in a parking driveway and stopped their

Law Offices of
LENNY RAPADAS, P.C.
[illegible address]
Case 1:17-cv-00071 Document 1 Filed 06/23/17 Page 3 of 15

vehicle at an angle to interfere with Mesa's exit.

16. Mesa drove out and around the officers' vehicle to leave the area. He did not speak to the officers, did not threaten the officers with his motorcycle, did not have a weapon, nor was he a threat to anyone else in the area.

17. Metal Road was heavily traveled by other vehicles on June 15, 2016, when the parties encountered each other.

18. After Mesa had passed the police vehicle and Officer Castro, Officer Castro shot him, striking him on his buttocks region. The gunshot caused Mesa to bleed and go numb, lose control of the motorcycle and crash on Hamburger Road. When Mesa crashed, the motorcycle struck a passing vehicle.

19. Prior to the shooting, neither officer was in any imminent danger from Mesa. Officer Chaco was inside the police vehicle and Officer Castro exited his vehicle. Mesa maneuvered the motorcycle around the police vehicle and proceeded the opposite way on Metal Road. The public was not in any imminent danger of injury by Mesa.

20. Mesa laid on the side of Adrian Sanchez Road and was not attended to or provided medical care by the Airport Officers.

21. As a result of being shot by Officer Castro, Plaintiff crashed the motorcycle, and suffered physical injuries and psychological trauma.

22. As he lay on the ground, Mesa feared he would be shot again. From his buttocks down, he felt numb and he could not move freely, nor feel his legs. Mesa initially thought he was paralyzed. As he lay there, Mesa heard one of the officers say, "Yeah par. I shot him. I shot his ass."

23. As a result of the wounds he suffered, Mesa was transported to Guam Memorial Hospital where he was admitted, treated and spent two days recovering.

24. After Mesa went past him, Officer Castro drew his weapon thereby violating GIAA Airport Police Divisional General Orders, Policies and Directives (D.G.O.) No. 09-005(V)(2).

25. When Officer Castro took aim as Plaintiff was driving away, pulled the trigger

and struck him, he violated D.G.O. No. 09-005(V)(6), (V)(7) and D.G.O. No. 09-005(X).

26. The officers were in no danger of serious bodily injury or death nor were members of the public in any similar danger. Officer Castro violated the Division's Use of Firearms Policy by shooting at Plaintiff for simply fleeing from the officers.

27. Officer Castro did not shoot to protect himself or the public. Officer Castro was not protecting third parties since shooting at a moving motorcycle would have endangered those persons.

28. Officer Castro fired his weapon at Plaintiff without justification.

29. Officer Castro's action of firing his weapon at a fleeing person violated peace officer Rules and Regulations of the Airport Police Division and Guam Police Department, decisions of the United States Supreme Court and Guam law.

30. GIAA Airport Police Division's General Orders, Policies and Directives ("D.G.O.") apply to Plaintiff's claims and the actions taken by the officers, namely:

    a. D.G.O. No. 09-005(V)(2) – "No Airport Police personnel shall draw (exhibit) their firearm, unless the use of a firearm is justified to protect others or themselves from imminent danger, which may result in serious bodily injury or death;

    b. D.G.O. No. 09-005(V)(6) – "Personnel **shall not** fire from or at a moving vehicle, as [it] greatly affects accuracy"; (emphasis added)

    c. D.G.O. No. 09-005(V)(7) – "Personnel **shall not** fire at a 'fleeing felon'"; (emphasis added)

    d. D.G.O. No. 09-005(VIII)(C)(3) – "Personnel shall only **draw** their weapon from its holster to defend themselves or others from imminent danger, which could result in death or serious bodily injury"; (emphasis added)

    e. D.G.O. No. 09-005(X) – "[T]he use of deadly force is authorized and justified **only as a last resort**, and only under certain circumstances", i.e., when it "is necessary to protect himself or others from imminent threat of death or serious bodily injury."; (emphasis added)

    f. The GIAA's "Use of Firearms Policy" repeats the policies above

regarding use of deadly force, firing at a moving vehicle and fleeing felons, and specifically adds: "An officer/guard shall not fire at . . . [s]omeone who is called upon to halt upon mere suspicion and who is [sic] simply runs away to avoid arrest."; and

      g.    Guam Airport Division Directive No. AP-013-FY14 – **Jurisdiction restricted to certain roadways.** (emphasis added).

31.    Under Guam law, the use of deadly force by the Airport officer without specified exemptions not applicable here, is prohibited pursuant to 9 GCA § 7.92(c) and (g).

32.    The Guam Police Department ("GPD") has similar restrictions in the use of deadly force: "Deadly force may not be used . . . [o]n a person who has not caused or threatened to cause serious bodily injury or death to another person, including the officer; . . . [o]n a person who simply flees or evades arrest; . . . [a]t . . . a moving vehicle, except in *exigent circumstances*, and only in an attempt to save human life or protect the public; [or] [m]erely to prevent the . . . theft of property".

33.    There was no justification or imminent threat or any objective reasonable rationale for the Airport Police Division officers to have violated federal and Guam laws, rules and regulations nor did Officer Castro have immunity permitting him to use deadly force in violation of Plaintiff's rights.

## V.
## PLAINTIFF'S FIRST CLAIM:
## CIVIL RIGHTS

34.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 33 of the Complaint.

35.    The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

other proper proceeding for redress. 42 U.S.C. § 1983.

36. Defendants, jointly and/or severally, deprived Plaintiff of his Fourth Amendment rights, and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the territory through the Fourteenth Amendment and the Organic Act. Defendants violated Plaintiff's rights in the following ways:'

    a. By using excessive and deadly force in the course of Officer Castro's attempt to seize the Plaintiff, in violation of the Fourth Amendment and its reasonableness standard.

    b. Plaintiff was unlawfully shot. This action resulted directly and only from a use of force that was clearly excessive to the need, and was objectively and subjectively unreasonable; and

    c. By failing to provide supervision and/or proper training to prevent such incidents of excessive force.

37. Defendant's violations of Plaintiff's constitutional rights resulted in Plaintiff's suffering and damages and were a direct cause of Plaintiff's injuries.

## VI.
## PLAINTIFF'S SECOND CLAIM:
## 42 U.S.C. § 1983— PEACE OFFICER LIABILITY

38. Plaintiff realleges each and every allegation contained in paragraphs 1 through 37 of the Complaint.

39. Plaintiff brings a claim against Officer Castro, individually as well as in his official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.

40. At all material times, Officer Castro was acting under color of state law as an agent and employee of Defendant GIAA. Officer Castro was wearing his official Guam Airport Police Department uniform, and was acting in the course and scope of his duties as an Airport Police Officer at the time he shot Plaintiff.

41. Force is excessive, and therefore violates the Fourth Amendment, if it is not
The Law Office of
LENNY RAPADAS, P.C.

Case 1:17-cv-00071   Document 1   Filed 06/23/17   Page 7 of 15

reasonable in light of the circumstances facing the officer. *See Graham v. Connor*, 490 U.S. 386, 398 (1989). The facts and circumstances of this case show that Defendant Castro's act of shooting Plaintiff was clearly unreasonable.

42. At the time of the incident, Officer Castro had no reason to believe Mesa was armed or dangerous. Plaintiff made no violent movements towards Castro or any other person that could be interpreted as threatening. Plaintiff made no verbal threats to Officer Castro or any other person. Plaintiff did not touch Officer Castro. It was clear to Officer Castro that Plaintiff was unarmed and did not have any weapon or dangerous device readily at hand.

43. Officer Castro did not have a reasonable fear of imminent bodily harm when he shot plaintiff nor did Officer Castro have a reasonable belief that any other person was in danger of imminent bodily harm from Plaintiff. Consequently, shooting Plaintiff was unwarranted under these circumstances, and was objectively unreasonable when comparing or balancing the amount of force used against the need for the force.

44. By using subjectively and objectively unreasonable deadly force while acting under color of state law, Officer Castro violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and caused his wrongful death.

## VII.
## PLAINTIFF'S THIRD CLAIM:
## 42 U.S.C. § 1983— AIRPORT LIABILITY

45. Plaintiff realleges each and every allegation contained in paragraphs 1 through 44 of the Complaint.

46. Plaintiff's constitutional rights were violated when he was shot by Officer Castro. Plaintiff's injuries directly resulted from Officer Castro's excessive use of deadly force in shooting Plaintiff.

47. GIAA is liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers, and for overlooking and covering up officer misconduct. GIAA's failure to supervise and train its police officers, and GIAA's willful blindness towards the

constitutional violations of its officers, constitute gross negligence and/or deliberate and conscious indifference to people's rights including the right to be free from unreasonable search and seizure and the rights conveyed to Plaintiff's under the Guam Organic Act as applied through 42 U.S.C. Sections 1983.

48. GIAA's formal and informal actions in overlooking, hiding and/or tacitly encouraging police misconduct through officers, reflect a policy, practice custom and procedure authorizing and allowing the use of excessive force that violated the civil rights of Plaintiff.

49. GIAA is liable for the constitutional torts of Officer Castro because GIAA sanctioned the following customs, practices, and policies:

    a. Using excessive, deadly force, to carry out otherwise routine arrests or stops;

    b. Using deadly force when such force was not necessary or permitted by law;

    c. Ignoring the serious need for training and supervision of its officers in regard to the use of force and their jurisdictional coverage area;

    d. Failing to discipline Officer Castro or find that he engaged in the use of excessive force;

    e. Failing to adequately supervise and/or observe its officers;

    f. Failing to adequately train officers regarding the availability of alternative means of detaining persons other than the use of force or deadly force.

    g. Failing to discharge Officer Castro who has shown a pattern or practice of using excessive force in his employment and private life; and

    h. Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in or out of the line of duty, are allowed to retain their positions.

50. At the time Officer Castro shot Plaintiff, Officer Castro was acting pursuant to GIAA's official policy, practice, custom and procedure overlooking and/or authorizing

police officer's excessive use of force.

51. GIAA's employment policy, review and decisions in handling the hiring and promotion fo Officer Castro was a direct cause of Plaintiff's injuries. In particular, the policy caused Plaintiff to be deprived of his constitutional rights to be free from unlawful seizures and objectively unreasonable force under the Fourth and Fourteenth Amendments and had his rights taken from him as applied through 42 U.S.C. Section 1983.

## VIII.
## PLAINTIFF'S FOURTH CLAIM:
## GOVERNMENT CLAIMS ACT

52. Plaintiff realleges each and every allegation contained in paragraphs 1 through 51 of the Complaint.

53. Alternatively, as a pendent state cause of action, Plaintiff bring this action pursuant to the Guam Government Claims Act.

54. On or about August 14, 2015, pursuant to the Government Claims Act, Plaintiff filed a Claim Against the Government for the amount of Three Hundred Thousand Dollars.

55. On August 21, 2015, the Government of Guam disavowed any involvement on Plaintiff's Claim Against the Government because GIAA is an autonomous agency.

56. On October 22, 2015, GIAA denied Plaintiff's Claim.

57. Plaintiff has exhausted his administrative remedies.

58. GIAA has not paid any portions of the amount Plaintiff claims.

59. The shooting of Plaintiff was a direct and proximate result of the intentional, or in the alternative, negligence of Officer Castro and GIAA.

60. At all material times, Officer Castro was the agent and employee of the GIAA and was acting within the course and scope of his employment with the GIAA.

61. Defendant GIAA is liable for injuries suffered by Plaintiff proximately caused by Officer Castro's commission of a wrongful act in the course and scope of his employment through the use or misuse of tangible personal property; namely, Defendant

Castro's service weapon required by the GIAA.

62. Pursuant to the Government Claims Act, GIAA had actual notice of the events giving rise to this lawsuit within the six-month period following the unlawful shooting of Plaintiff and refused to engage Plaintiff or his counsel in any discussion of the Claims.

## IX.
## PLAINTIFF'S FIFTH CLAIM:
## ASSAULT

63. Plaintiff realleges each and every allegation contained in paragraphs 1 through 62 of the Complaint.

64. Under Guam law, a parallel cause of action for excessive force is a cause of action for assault and battery. Plaintiff alleges an alternative pendent territorial claim for assault and battery.

65. Officer Castro committed an assault upon Plaintiff when Officer Castro intentionally, knowingly, and/or recklessly caused Plaintiff to be shot. Officer Castro's assault conduct was committed intentionally, knowingly, and/or recklessly, and was the proximate cause of physical and emotional injuries to the Plaintiff. Said injuries were the direct and immediate consequence of Officer Castro's wrongful acts and a natural and direct result of the assault.

66. At no time was Officer Castro privileged to shoot Plaintiff, as lethal force was not necessary under the circumstances.

## X.
## PLAINTIFF'S SIXTH CLAIM:
## NEGLIGENCE

67. Plaintiff realleges each and every allegation contained in paragraphs 1 through 66 of the Complaint.

68. In the alternative, Plaintiff brings his claims of negligence against Defendants.

69. Defendants had a duty of due care and statutory and regulatory duties to Plaintiff as a citizen of Guam.

70. Defendants breached their duties to Plaintiff by shooting him from behind and failing to promptly administer medical care. Officer Castro chose instead to revel in and brag about shooting Plaintiff.

71. GIAA failed to properly investigate the shooting and condoned the actions of Officer Castro.

72. As a result fo Defendants' breaches, Plaintiff was hospitalized and suffered pain and suffering in an amount to be proven at trial.

## XI.

## PLAINTIFF'S SEVENTH CLAIM:
## NEGLIGENT HIRING, TRAINING AND RETENTION
## AND GROSS NEGLIGENCE

73. Plaintiff realleges each and every allegation contained in paragraphs 1 through 72 of the Complaint.

74. An Agency may be held liable for its failure to train a single police officer when the officer's acts were so egregious that GIAA should have had clear warning that the particular officer posed a danger to citizens.

75. With respect to Officer Castro, the need for additional or different training was obvious. Defendant Castro had a history of unjustifiably and forcefully behaving with excessive force. Officer Castro has discharged his weapon in public in the past which was known or should have been known to GIAA. When it armed Officer Castro, GIAA knew or should have known that Officer Castro was likely to engage in other acts of excessive force. By promoting Officer Castro in the past and failing to discipline, supervise, or train Defendant Castro, GIAA authorized or ratified Officer Castro's wrongful acts both by acceptance of acts prior to and including those that caused Plaintiff's damages.

76. GIAA's acts and omissions, when viewed objectively, involved an extreme degree of risk, considering the probability and magnitude of harm to others. GIAA had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others including Plaintiff by

rearming Officer Castro.

77. Thus, in light of the particular risk posed by Officer Castro, GIAA's failure to train and supervise Castro constitutes gross negligence and/or deliberate and conscious indifference to the rights, safety, and welfare of others, including Plaintiff.

78. When GIAA hired Officer Castro to act as an Airport Policeman it knew of the magnitude of the risk involved in hiring Officer Castro as an Airport Policeman for the premises, but Defendant GIAA nonetheless proceeded to hire and train Officer Castro, acting with conscious indifference to the rights, safety, and welfare of others, including Plaintiff.

79. Defendant GIAA's negligence includes, but is not limited to, the following acts and omissions:

    a. GIAA negligently hired Officer Castro, despite Defendants' knowledge that Officer Castro could harm the public;

    b. GIAA failed to screen, or adequately screen, Castro;

    c. GIAA failed to train, or adequately train, Castro;

    d. GIAA failed to supervise, or adequately supervise, Castro; and

    e. GIAA negligently retained Castro even though GIAA knew, or should have known, that Officer Castro posed a danger to the public.

80. Each of the above listed acts and/or omissions, taken singularly or in any combination, rise to the level of gross negligence.

81. GIAA's acts and omissions, when viewed objectively from the standpoint of the Officers at the time of its occurrence, involved indifference and an extreme degree of risk, considering the probability and magnitude of harm to others.

82. Defendant GIAA had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Defendant GIAA was grossly negligent.

83. As a proximate result of the negligence and/or gross negligence of Defendant GIAA, Plaintiff suffered damages in an amount to be proven at trial

## XII.
## RESPONDEAT SUPERIOR

84. Plaintiff realleges each and every allegation contained in paragraphs 1 through 83 of the Complaint.

85. At the time of the incident, Officer Castro was an employee, agent, and/or servant of Defendant GIAA acting within the employment with GIAA at the time of the shooting. As such, Defendant GIAA is responsible for the conduct of Officer Castro under the doctrine of respondeat superior due to the master-servant relationship which existed at the time of the shooting alleged herein.

## XIII.
## DAMAGES

86. Plaintiff realleges each and every allegation contained in paragraphs 1 through 85 of the Complaint.

87. In his Claim Against the Government, Plaintiff sought Three Hundred Thousand ($300,000.00) in damages. In addition to the damages mentioned in the preceding paragraphs as a direct and proximate result of the intentional, unlawful and/or negligent conduct of Defendants, Plaintiff has suffered, and in reasonable probability will continue to suffer damages.

88. In addition, Defendant Castro is liable for exemplary damages arising from his outrageous and malicious conduct and unjustifiable shooting of Plaintiff.

## XIV.
## ATTORNEY'S FEES

89. Plaintiff realleges each and every allegation contained in paragraphs 1 through 88 of the Complaint.

90. Plaintiff is entitled to recover attorney's fees and costs as set forth in the Civil Rights Attorney's Fees Award Act of 1976. 49 U.S.C. § 1988. Plaintiff thereby requests that the Court and jury award him attorney's fees and expenses.

///

## XV.
## JURY DEMAND

91. Plaintiff realleges each and every allegation contained in paragraphs 1 through 90 of the Complaint.

92. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial.

WHEREFORE, Plaintiff respectfully request that Defendants be cited to appear and answer herein, that Plaintiff be granted judgment on his claims against Defendants, jointly and severally, for compensatory damages; exemplary damages; post-judgment interest, costs of court, attorney's fees and expenses and all other relief to which Plaintiff is justly entitled, at law or in equity.

*Respectfully submitted* this 22nd day of June, 2017.

**The Law Office of
LENNY RAPADAS, P.C.**

By_____
**LEONARDO M. RAPADAS, ESQ.**
*Attorney for Plaintiff*

The Law Office of
LENNY RAPADAS, P.C.